UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| JORDAN JAMES ANGER,<br><br>         Plaintiff,<br><br>    vs.<br><br>COUNTY OF HAWAII, BY AND THROUGH<br>ITS CORPORATION COUNCIL (RENEE<br>SCHOEN);<br><br>         Defendant. | CIV. NO. 26-00004 LEK-WRP |

**ORDER: DISMISSING PLAINTIFF'S COMPLAINT FOR
VIOLATION OF CIVIL RIGHTS WITHOUT PREJUDICE;
AND RESERVING RULING ON PLAINTIFF'S APPLICATION TO
PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS**

On January 5, 2026, pro se Plaintiff Jordan James Anger ("Anger") filed a Complaint for Violation of Civil Rights ("Complaint") and an Application to Proceed in District Court Without Prepaying Fees or Costs ("Application"). [Dkt. nos. 1, 2.] For the reasons set forth below, the Complaint is dismissed without prejudice, and the Court will reserve ruling on the Application. Anger will be given the opportunity to file an amended complaint to try to cure the defects in the Complaint that are identified in this Order, and this Court will rule on the Application if any portion of the amended complaint survives the screening process. Anger's amended complaint must be filed by **April 17, 2026.**

## BACKGROUND

Anger states that his "CJIS report" erroneously states
that he was "[a]rrest[ed] for allegedly 'Intoxicating Liquors
prohibited in certain public places (HCO 14-01)' and 'Liquor
Violation involving a minor (HRS 281-0101.5)'"[1] but that the
charges were later dismissed. [Complaint at § III.C.1.] Anger
states that he was not on the Island of Hawai`i near the time of
the purported June 22, 2005 arrest. See id. Anger contends the
"inaccurate record functioned as (one of) the first criminal
justice reference point(s) relied upon by law enforcement and
related systems." [Id.] According to Anger, the 2005 arrest
record influenced the plea agreement that the County of Hawai`i
Prosecutor's Office offered him when he was on trial for
allegedly misusing the 911 system. See id.; see also id. at
§ III.C.3 (allegations regarding Anger's 10/9/24 arrest for
misusing the 911 system and harassing a 911 operator).

Anger argues the erroneous 2005 arrest record
"subjected [him] to ongoing exposure to detention, enforcement
action, and restriction of liberty." Id. at § III.C.1; see also
§ IV.1 (alleging "irreparable harm to personal autonomy,
including normal sexual activity and intimate association,
arising from prolonged restraint, surveillance, and criminal

---

[1] "HCO" refers to the Hawai`i County Code and "HRS" refers
to the Hawai`i Revised Statutes.

justice interference rooted in an improper and erroneous record maintained for approximately twenty-five (25) years"). Anger seeks compensatory damages for his "constructive confinement and restriction of liberty over approximately 25.6 years (May 13, 2000 - December 31, 2025)."[2] [Id. at § V.I.A.]

With regard to the October 9, 2024 arrest, Anger alleges that: he made the 911 call in response to an ongoing emergency; he said during the 911 call that he intended to make a harassment complaint against a police officer who had recently left Anger's residence; and he also said during the call that he wanted to make a complaint about the 911 operator's behavior. [Id. at § III.C.3.] According to Anger, "the operator acknowledged understanding that [Anger] was disabled and [the operator] admitted, both in recorded transcripts and in sworn testimony, that reasonable accommodations were not provided during the interaction." [Id.] Anger states that, "[f]ollowing the arrest, portions of body-worn camera footage were not preserved, provided, and or are missing . . . ." [Id.]

Anger also alleges he was subjected to "multiple wrongful arrests and detentions, including seven arrests in

---

[2] Anger identifies May 13, 2000 as one of the dates of the events giving rise to his claims. See Complaint at § III.B.1. However, the Complaint does not identify the event that allegedly occurred on May 13, 2000. The alleged arrest on June 22, 2005 is the earliest event described in the Complaint.

Hawaii and one arrest in Washington State, all traceable to erroneous criminal justice records and their continued reliance." [Id. at § V.I.B.]

The sole defendant in this case is the County of Hawai`i ("the County"). See id. at § I.B. Anger states that he is bringing: a claim against the County under Title 42 United States Code Section 1983; a claim under Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), Title 29 United States Code Section 794; and a claim under Title II of the Americans with Disabilities Act ("ADA"), Title 42 United States Code Sections 12131 to 12134. See Complaint at § II.

## STANDARD

"Federal courts can authorize the commencement of any suit without prepayment of fees or security by a person who submits an affidavit that demonstrates he is unable to pay." Smallwood v. Fed. Bureau of Investigation, CV. NO. 16-00505 DKW-KJM, 2016 WL 4974948, at *1 (D. Hawai`i Sept. 16, 2016) (citing 28 U.S.C. § 1915(a)(1)).

> The Court subjects each civil action
> commenced pursuant to Section 1915(a) to
> mandatory screening and can order the dismissal
> of any claims it finds "frivolous, malicious,
> failing to state a claim upon which relief may be
> granted, or seeking monetary relief from a
> defendant immune from such relief." 28 U.S.C.
> § 1915(e)(2)(B); Lopez v. Smith, 203 F.3d 1122,
> 1126-27 (9th Cir. 2000) (en banc) (stating that
> 28 U.S.C. § 1915(e) "not only permits but
> requires" the court to sua sponte dismiss an in

4

*forma pauperis* complaint that fails to state a claim);[3] Calhoun v. Stahl, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (holding that "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners").

Id. at *3.

In addition, the following standards apply in the screening analysis:

Plaintiff is appearing pro se; consequently, the court liberally construes her pleadings. Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants." (citing Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam))). The court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th. [sic] Cir. 2000).

Despite the liberal pro se pleading standard, the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on its own motion. See Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim *sua sponte* under [Rule] 12(b)(6). Such a dismissal may be made without notice where the claimant cannot possibly win relief."); see also Baker v. Dir., U.S. Parole Comm'n, 916 F.2d 725, 727 (D.C. Cir. 1990) (holding that district court may dismiss cases *sua sponte* pursuant to Rule 12(b)(6) without notice where plaintiff could not prevail on complaint as alleged). . . . .

---

[3] Lopez has been overruled, in part, on other grounds by Peralta v. Dillard, 744 F.3d 1076 (9th Cir. 2014) (en banc).

_Flores v. Trump_, CIVIL 16-00652 LEK-RLP, 2017 WL 125698, at *1 (D. Hawai`i Jan. 12, 2017) (some alterations in _Flores_) (some citations omitted).

**DISCUSSION**

I.    **Anger's Section 1983 Claim**

This Court first addresses the issue of whether Anger's Section 1983 claim is timely. Anger's Section 1983 claim is governed by the limitations period for personal injury actions under Hawai`i law. _See Nance v. Ward_, 597 U.S. 159, 174 (2022). In Hawai`i, the statute of limitations for personal injury actions is two years. _See_ Haw. Rev. Stat. § 657-7. State tolling statutes apply to Section 1983 claims, _see Artis v. Dist. of Columbia_, 583 U.S. 71, 83 (2018), as do equitable tolling rules, "except to the extent any of these laws is inconsistent with federal law[,]" _Butler v. Nat'l Cmty. Renaissance of Cal._, 766 F.3d 1191, 1198 (9th Cir. 2014) (quotation marks and citations omitted). However, "the time at which a § 1983 claim accrues is a question of federal law, conforming in general to common-law tort principles." _McDonough v. Smith_, 588 U.S. 109, 115 (2019) (citation and internal quotation marks omitted). Courts look to "the most natural common-law analogy" to determine when a particular Section 1983 claim accrues. _Id._ at 114.

Anger's Section 1983 claim is based on the allegedly
erroneous entry of the June 22, 2005 arrest in his CJIS record,[4]
and the allegedly wrongful arrests that Anger was subjected to
because of the erroneous record. See Complaint at §§ III.C.1,
V.I.B. Anger's Section 1983 claim is most closely analogous to
the common law torts of false arrest and false imprisonment. The
United States Supreme Court has stated that "[f]alse arrest and
false imprisonment overlap," and can therefore be referred to
collectively as "false imprisonment." Wallace v. Kato, 549 U.S.
384, 388-89 (2007). The tort of false imprisonment addresses
"detention without legal process." See id. at 389.

> The running of the statute of limitations on
> false imprisonment is subject to a distinctive
> rule — dictated, perhaps, by the reality that the
> victim may not be able to sue while he is still
> imprisoned: "Limitations begin to run against an
> action for false imprisonment when the alleged
> false imprisonment ends." 2 H. Wood, Limitation
> of Actions § 187d(4), p. 878 (rev. 4th ed. 1916);
> see also 4 Restatement (Second) of Torts § 899,
> Comment c (1977); A. Underhill, Principles of Law
> of Torts 202 (1881). Thus, to determine the
> beginning of the limitations period in this case,
> we must determine when petitioner's false
> imprisonment came to an end.

---

[4] Anger's reference to the CJIS appears to refer to the
Criminal Justice Information System, which is a statewide
information system that is maintained by a state department. Cf.
Silva v. Hawai`i, No. CAAP-11-0000121, 2014 WL 1744077, at *2
(Hawai`i Ct. App. Apr. 30, 2014) (summarizing a declaration
submitted by the State of Hawai`i in support of a motion for
summary judgment). Thus, to the extent that Anger's claim is
based upon the allegedly erroneous entry of the June 22, 2005
arrest in the CJIS, it appears that the County is not the proper
defendant for such a claim.

      Reflective of the fact that false
imprisonment consists of detention without legal
process, a false imprisonment ends once the
victim becomes held **pursuant to such process** —
when, for example, he is bound over by a
magistrate or arraigned on charges. 1 [D.] Dobbs,
[Law of Torts] § 39, at 74, n.2 [(2001)];
[W.] Keeton, [D. Dobbs, R. Keeton, & D. Owen,
Prosser and Keeton on Law of Torts], § 119, at
888 [(5th ed. 1984)]; H. Stephen, Actions for
Malicious Prosecution 120–123 (1888). Thereafter,
unlawful detention forms part of the damages for
the "entirely distinct" tort of malicious
prosecution, which remedies detention
accompanied, not by absence of legal process, but
by **wrongful institution** of legal process. Keeton,
*supra*, § 119, at 885–886; see 1 F. Harper,
F. James, & O. Gray, Law of Torts § 3.9, p. 3:36
(3d ed. 1996); 7 [S.] Speiser, [C. Krause, &
A. Gans, American Law of Torts] § 27:2, at 943–
945 [(1990)]. "If there is a false arrest claim,
damages for that claim cover the time of
detention up until issuance of process or
arraignment, but not more. From that point on,
any damages recoverable must be based on a
malicious prosecution claim and on the wrongful
use of judicial process rather than detention
itself." Keeton, *supra*, § 119, at 888; see also
Heck [v. Humphrey], [512 U.S. 477,] 484 [(1994)];
8 Speiser, *supra*, § 28:15, at 80. Thus,
petitioner's contention that his false
imprisonment ended upon his release from custody,
after the State dropped the charges against him,
must be rejected. It ended much earlier, when
legal process was initiated against him, and the
statute would have begun to run from that date,
but for its tolling by reason of petitioner's
minority.

Id. at 389–90 (footnotes omitted).

      Based on the allegations of the Complaint, this Court

cannot determine when the allegedly wrongful arrests and

detentions occurred. Each allegedly wrongful arrest would be the

basis of a separate Section 1983 claim, and this Court cannot determine when those claims accrued. It is likely that some of the allegedly wrongful arrests occurred well beyond the statute of limitations period. See, e.g., Complaint at § IV.2 (alleging Anger "sustained irreparable harm to two marital relationships over the course of the twenty-five (25) year period during which the erroneous record remained in effect"). Anger's Section 1983 claims based on those arrests would be time-barred because they accrued more than two years before Anger filed this action. However, it is possible that either: 1) some of the allegedly wrongful arrests referred to in the Complaint occurred within the limitations period; or 2) some of the claims based upon arrests that occurred beyond the limitations period did not accrue until a date within the limitations period. Therefore, Anger's Section 1983 claims are dismissed because they appear to be time-barred, but the dismissal is without prejudice because it may be possible for Anger to cure the defect in his Section 1983 claims by amendment. See Lucas, 66 F.3d at 248.

Because Anger will have the opportunity to file an amended complaint, this Court provides the following guidance for Anger to consider in preparing his amended complaint, if he chooses to file one.

   42 U.S.C. § 1983 states, in pertinent part:

   Every person who, under color of any
   statute, ordinance, regulation, custom, or
   usage, of any State . . . , subjects, or
   causes to be subjected, any citizen of the
   United States or other person within the
   jurisdiction thereof to the deprivation of
   any rights, privileges, or immunities
   secured by the Constitution and laws, shall
   be liable to the party injured in an action
   at law, suit in equity, or other proper
   proceeding for redress . . . .

Section 1983 liability cannot be based on
respondeat superior. Ewing v. City of Stockton,
588 F.3d 1218, 1235 (9th Cir. 2009).

   A municipality may be held liable as a
   "person" under 42 U.S.C. § 1983 when it
   maintains a policy or custom that causes the
   deprivation of a plaintiff's federally
   protected rights. Monell [v. Dep't of Soc.
   Servs. of N.Y.C.], 436 U.S. [658,] 694, 98
   S. Ct. 2018 [(1978)]. To state such a claim,
   a plaintiff must allege either that (1) "a
   particular municipal action **itself** violates
   federal law, or directs an employee to do
   so"; or (2) the municipality, through
   inaction, failed to implement adequate
   policies or procedures to safeguard its
   community members' federally protected
   rights. Board of Commissioners of Bryan
   County v. Brown, 520 U.S. 397, 404, 407-08,
   117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997);
   see also Tsao v. Desert Palace, Inc., 698
   F.3d 1128, 1143 (9th Cir. 2012). When, as
   here, a plaintiff pursues liability based on
   a failure to act, she must allege that the
   municipality exhibited deliberate
   indifference to the violation of her
   federally protected rights. Tsao, 698 F.3d
   at 1143.

Park v. City & Cnty. of Honolulu, 952 F.3d 1136,
1141 (9th Cir. 2020) (emphasis in Park).

Spriestersbach v. Hawai`i, 622 F. Supp. 3d 948, 958-59 (D. Hawai`i 2022) (alterations in Spriestersbach). To the extent that Anger alleges the County failed to correct his erroneous arrest record, the Complaint fails to allege facts that, if proven, would establish the requirements for a Monell claim. In addition, this Court questions whether the County is the proper defendant as to any Section 1983 claim based on the allegedly wrongful arrest that occurred in the State of Washington. See Complaint at § V.I.B.

## II.  **ADA Claim**

Title II of the ADA prohibits public entities from discriminating on the basis of disability. Payan v. Los Angeles Cmty. Coll. Dist., 11 F.4th 729, 737 (9th Cir. 2021) (citing 42 U.S.C. § 12132). A plaintiff asserting an ADA Title II claim must ultimately prove that "(1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason of [his] disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002) (citation omitted).

A two-year statute of limitations applies to Anger's ADA claim, unless the claim was made possible by the ADA Amendments Act of 2008 ("ADAAA"). See Spriestersbach, 622 F.

Supp. 3d at 958. This Court must liberally construe Anger's
Complaint because Anger is proceeding pro se. See Erickson v.
Pardus, 551 U.S. 89, 94 (2007) (per curiam). However, even
liberally construing Anger's Complaint, the only arguable
assertion of disability discrimination is in relation to the
October 2024 911 call. See Complaint at § III.C.3. Because this
Court construes Anger's ADA Title II claim as based solely upon
the October 2024 911 call, even assuming that the two-year
statute of limitations period applies, Anger's ADA claim is
timely.

Anger alleges he has been diagnosed with autism
spectrum disorder, and he states he "suffer[s] ongoing emotional
distress, trauma, and psychological injury." [Complaint at
§ V.6.] This is sufficient to allege that Anger has a disability
for purposes of the ADA. See 42 U.S.C. § 12102(1) ("The term
'disability' means, with respect to an individual — (A) a
physical or mental impairment that substantially limits one or
more major life activities of such individual; (B) a record of
such an impairment; or (C) being regarded as having such an
impairment . . . .").

The Complaint, however, only makes a conclusory
allegation that "reasonable accommodations were not provided"
for Anger's disability during the October 2024 911 call. See
Complaint at § III.C.3. Even without a motion to dismiss filed

by a defendant, this Court may dismiss Anger's Complaint
pursuant to Federal Rule of Civil Procedure 12(b)(6). See Omar,
813 F.2d at 991. Under the Rule 12(b)(6) standard, the factual
allegations of Anger's Complaint are assumed to be true, but
this Court does not "accept as true a legal conclusion couched
as a factual allegation." See Ashcroft v. Iqbal, 556 U.S. 662,
678 (2009) (quotation marks and citation omitted). This Court
therefore does not accept as true the Complaint's allegation
that reasonable accommodations for Anger's disability were not
provided during the October 2024 911 call. The Complaint fails
to plead sufficient factual allegations to state a plausible ADA
Title II claim, and the claim must be dismissed. See id. ("To
survive a motion to dismiss, a complaint must contain sufficient
factual matter, accepted as true, to state a claim to relief
that is plausible on its face. A claim has facial plausibility
when the plaintiff pleads factual content that allows the court
to draw the reasonable inference that the defendant is liable
for the misconduct alleged." (citations and internal quotation
marks omitted)). The dismissal of Anger's ADA Title II claim is
without prejudice because it may be possible for Anger to cure
the defect in his claim by amendment.

        This Court provides the following guidance for Anger
to consider if he chooses to file an amended complaint. The
Complaint seeks various forms of monetary damages, although it

is unclear whether some of the damages sought are associated
solely with Anger's Section 1983 claims. See Complaint at
§§ V.I-III. If the amended complaint seeks monetary damages as
to Anger's ADA Title II claim, to ultimately prevail on that
claim, Anger will be required to prove intentional
discrimination. See Updike v. Multnomah Cnty., 870 F.3d 939, 950
(9th Cir. 2017). "To show intentional discrimination, this
circuit requires that the plaintiff show that a defendant acted
with 'deliberate indifference,' which requires both knowledge
that a harm to a federally protected right is substantially
likely, and a failure to act upon that likelihood." Id. at 950-
51 (alteration, citation, and internal quotation marks omitted).

Further, because Anger's ADA Title II claim appears to
be based on a failure-to-accommodate theory, see Complaint at
§ III.C.3, this Court notes that the Ninth Circuit has stated:

> A public entity must "make reasonable
> modifications in policies, practices, or
> procedures when the modifications are necessary
> to avoid discrimination on the basis of
> disability." Zukle [v. Regents of the Univ. of
> Cal.], 166 F.3d [1041,] 1046 [(9th Cir. 1999)]
> (quoting 28 C.F.R. § 35.130(b)(7)). The [ADA
> does] not require an [entity] "to make
> fundamental or substantial modifications to its
> programs or standards," however. Id. Because the
> issue of reasonableness depends on the individual
> circumstances of each case, this determination
> requires a fact-specific, individualized analysis
> of the disabled individual's circumstances and
> the accommodations that might allow him to meet
> the program's standards. See Crowder v. Kitagawa,
> 81 F.3d 1480, 1486 (9th Cir. 1996). As we have

14

> observed in the employment context, "mere[]
> speculat[ion] that a suggested accommodation is
> not feasible" falls short of the "reasonable
> accommodation" requirement; the [ADA] creates "a
> duty to 'gather sufficient information from the
> [disabled individual] and qualified experts as
> needed to determine what accommodations are
> necessary to enable [the individual to meet the
> standards in question].'" <u>Buckingham v. United
> States</u>, 998 F.2d 735, 740 (9th Cir. 1993)
> (quoting <u>Mantolete v. Bolger</u>, 767 F.2d 1416, 1423
> (9th Cir. 1985)).

<u>Wong v. Regents of Univ. of Cal.</u>, 192 F.3d 807, 818 (9th Cir.

1999), *as amended* (Nov. 19, 1999) (some alterations in <u>Wong</u>)

(some citations omitted).

This Court also notes that, although the 911 system is

a service that is available to the public, the Complaint does

not allege that the County is responsible for the portion of the

911 system that Anger was using when he was allegedly subjected

to discrimination on the basis of a disability.

**III.  <u>Rehabilitation Act Claim</u>**

Similar to Title II of the ADA, Section 504 of the

Rehabilitation Act prohibits disability discrimination, but

"[t]he ADA applies only to public entities, whereas the

[Rehabilitation Act] proscribes discrimination in all federally-

funded programs." <u>Lovell</u>, 303 F.3d at 1052; <u>see also</u> 29 U.S.C.

§ 794(a) ("No otherwise qualified individual with a disability

in the United States . . . shall, solely by reason of her or his

disability, be excluded from the participation in, be denied the

benefits of, or be subjected to discrimination under any program

or activity receiving Federal financial assistance . . . .").

> To establish a violation of § 504 of the
> [Rehabilitation Act], a plaintiff must show that
> (1) she is handicapped within the meaning of the
> RA; (2) she is otherwise qualified for the
> benefit or services sought; (3) she was denied
> the benefit or services solely by reason of her
> handicap; and (4) the program providing the
> benefit or services receives federal financial
> assistance.

Lovell, 303 F.3d at 1052.

The Ninth Circuit has stated that "[t]here is no

significant difference in analysis of the rights and obligations

created by the ADA and the Rehabilitation Act." Zukle, 166 F.3d

at 1045 n.11 (some citations omitted) (citing 42 U.S.C. § 12133

("The remedies, procedures, and rights set forth in [the

Rehabilitation Act] shall be the remedies, procedures, and

rights [applicable to ADA claims].")). "Thus, courts have

applied the same analysis to claims brought under both

statutes." Id. (citation omitted). Anger's Rehabilitation Act

claim is therefore dismissed without prejudice for the same

reasons set forth above regarding Anger's ADA Title II claim.

**IV.  Summary and the Potential Amended Complaint**

All of Anger's claims in the Complaint have been

dismissed without prejudice. In other words, if Anger chooses to

pursue his claims in this case, Anger may attempt to remedy the

deficiencies in the Complaint by filing an amended complaint.

16

This Court emphasizes that it has only conducted a preliminary screening of Anger's claims, and there may be other deficiencies in Anger's claims that are not identified in this Order.

If Anger chooses to file an amended complaint, he cannot incorporate any part of his original Complaint into the amended complaint by merely referring to portions of the original Complaint. Further, Anger may not add new claims in the amended complaint, unless the new claims relate to the claims alleged in the original Complaint. New claims that are not related to the claims in the Complaint are subject to dismissal.

Anger is cautioned that, if he chooses to file an amended complaint, he must do so by the deadline set in this Order, unless he obtains an extension of the deadline from this Court. If no amended complaint is filed by the deadline, the claims in the Complaint that were dismissed without prejudice will be dismissed with prejudice. Anger would then have no remaining claims in this case, and the Clerk's Office would be directed to close the case.

Anger is also cautioned that, if he files an amended complaint, the claims in the amended complaint may be dismissed with prejudice if the amended complaint fails to cure the defects identified in this Order.

## V.    <u>Application</u>

Insofar as the Complaint has been dismissed without prejudice, this Court declines to rule on the Application at this time. If Anger chooses to file an amended complaint, and if any portion of the amended complaint survives the screening process, this Court will then rule upon the Application and address whether Anger is entitled to proceed in this case without prepaying fees and costs. If Anger either chooses not to file an amended complaint or if all of the claims in the amended complaint are dismissed with prejudice, the Application will be denied as moot.

<u>CONCLUSION</u>

On the basis of the foregoing, Anger's Complaint for Violation of Civil Rights, filed January 5, 2026, is DISMISSED. The dismissal is WITHOUT PREJUDICE to the filing of an amended complaint that cures the defects identified in this Order. If Anger chooses to file an amended complaint, he must do so by **April 17, 2026.** The amended complaint must comply with the terms of this Order. Anger is CAUTIONED that, if he fails to file an amended complaint by **April 17, 2026,** the Complaint will be dismissed with prejudice on **April 20, 2026.**

In addition, the Court RESERVES RULING on Anger's Application to Proceed in District Court Without Prepaying Fees or Costs, filed January 5, 2026. If Anger chooses to file an

amended complaint, and at least a portion of it survives the screening process, the merits of the Application will be addressed.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 17, 2026.



/s/ Leslie E. Kobayashi

Leslie E. Kobayashi
Senior U.S. District Judge

JORDAN JAMES ANGER VS. COUNTY OF HAWAII, ETC; CV 26-00004 LEK-WRP; ORDER:  DISMISSING PLAINTIFF'S COMPLAINT FOR VIOLATION OF CIVIL RIGHTS WITHOUT PREJUDICE; AND RESERVING RULING ON PLAINTIFF'S APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS